IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MICHAEL MARVIN RUSSIE, | § | |
| TDCJ-CID No. 01790108, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:17-CV-225-Z-BR |
| | § | |
| LORIE DAVIS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**
**DISMISSING CIVIL RIGHTS COMPLAINT**

Plaintiff Michael Marvin Russie, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice ("TDCJ"), Correctional Institutions Division, has filed suit against Defendants pursuant to 42 U.S.C. § 1983 and has been granted permission to proceed *in forma pauperis*. For the following reasons, Plaintiff's civil rights Complaint is DISMISSED with prejudice.

FACTUAL BACKGROUND

Plaintiff brings claims of retaliation by TDCJ defendants, specifically in the form of false disciplinary cases, improper housing assignments, denial of access to legal and indigent supplies, and biased grievance denials. ECF No. 3, at 3. Plaintiff alleges that, since his transfer to the Bill Clements Unit ("Clements Unit"), the prison guards have demonstrated overzealous and aggressive towards him because of his housing classification. TDCJ changed Plaintiff's housing classification because he accrued a number of disciplinary violations shortly after moving into the

1

Clements Unit. *See id*. at 4. Plaintiff alleges the disciplinary infractions never occurred, and that the prison guards invented the violations to retaliate against Plaintiff. *Id.*

Plaintiff alleges that he was a minimum-security inmate for approximately seven months after he first arrived at the Bill Clements Unit. ECF No. 4, Memorandum in Support of Complaint, at 9. However, after this time, Plaintiff received "numerous false infractions … designed to make it appear [he was] being a nonconformer [sic]." *Id*. Plaintiff believes that the prison guards began to cite him for illusory infractions because he refused to join the "White Knights," a prison gang, after it recruited him. *Id.* After Plaintiff refused to join the gang, he believes other inmates labeled him as a snitch. *Id.* As a result of that label, other inmates became violent towards him, and the TDCJ prison guards did nothing to protect him. *Id.* Further, Defendant Dean, a TDCJ Captain, attempted to recruit Plaintiff to snitch on other inmates. *Id.* Plaintiff claims he refused. *Id.*

On March 27, 2017, Plaintiff received a citation for threatening an officer – specifically, Defendant Dean. *See id*. at 22. Plaintiff received a major disciplinary case (20170215570) for this infraction. *Id.* Plaintiff filed a Step 1 grievance (2017118547) in response to the disciplinary conviction. *Id*. In his grievance, Plaintiff admitted, "I don't deny saying to myself 'that I'll be done with you,' but did not make it an accusation toward him [Captain Dean]." *Id*. Further, nowhere in the Step 1 grievance does Plaintiff mention Defendant Dean's attempt to recruit him as a snitch, or that such recruitment had occurred prior to Defendant Dean's filing of this charge. *Id*. Nor did Plaintiff also did not mention such an interaction with Defendant Dean when he filed his Step 2 grievance. *Id*. at 24–25. Plaintiff had already received numerous other disciplinary infractions prior to the one brought by Defendant Dean. *See id*. at 48–51 (records of disciplinary offenses committed on 11/30/15 and 1/22/16). The disciplinary cases that followed the case with Defendant Dean

2

involved different guards. *See id.* at 26–33 (grievances filed concerning other disciplinary cases). Plaintiff offered no reasons for why other individuals would file "false" infractions against him.

Plaintiff alleges that, as a result of "retaliation," he has been denied access-to-the-courts through the denial of indigent supplies. *See id.* at 10. As to the current suit, Plaintiff alleges that as early as October 16, 2017, he requested to mail his current lawsuit. *Id*; *see also* ECF No. 11 (grievances filed in response to denial of supplies, and TDCJ responses to Plaintiff's requests for supplies). The lawsuit was received by this Court on November 20, 2017, over a month later. ECF No. 3. However, Plaintiff does not indicate by his Complaint or attachments how he was prejudiced by the delay. Additionally, Plaintiff alleges his habeas corpus claim in state court was "denied" because he did not have access to adequate legal supplies. ECF No. 4, at 5.

Plaintiff also alleges his grievances were denied or not investigated as part of the pattern of retaliation against him, resulting from the "nonconformer" label obtained through his false disciplinary convictions.

LEGAL STANDARD

When a prisoner confined in any jail, prison, or other correctional facility brings an action with respect to prison conditions under any federal law, the Court may evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993).

conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).[2]

ANALYSIS

Plaintiff alleges Defendants retaliated against him through false disciplinary convictions (with resultant improper housing assignments), denial of access to adequate indigent legal supplies, and improper denial of grievances related to his false disciplinary convictions. Prison officials may not retaliate against an inmate for exercising his right of access-to-the-courts or complaining to a supervisor about a prison employee or official. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). To prevail on a retaliation claim, an inmate must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for exercising that right, (3) a retaliatory or adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "*but for* the retaliatory motive the complained of incident … would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (emphasis added, internal citations omitted), *cert. denied*, 522 U.S. 995 (1997). Conclusory allegations of retaliation are insufficient to defeat a summary judgment motion. *Woods*, 60 F.3d at 1166. "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson*, 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce direct evidence of motivation,

---

[2] *Green vs. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.")

or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks omitted).

Trial courts are required to carefully scrutinize claims of retaliation, especially in relation to disciplinary convictions, "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Id.* at 1166.

### A. False Disciplinary Convictions & Resultant Housing

Plaintiff sues Defendant Dean, Captain of the TDCJ guards assigned to Plaintiff's cell block, for retaliation. Plaintiff's claim of retaliation for false disciplinary convictions fails on multiple grounds. First, Plaintiff has not provided direct evidence of a retaliatory motive or alleged a chronology of events from which retaliation may be plausibly inferred. Plaintiff alleges that inmates tried to recruit him to the "White Knights," a prison gang. ECF No. 4, Affidavit No. 1, in Support of Complaint, at 9. When he declined, TDCJ allowed other inmates to label him a "snitch," and guards failed to protect him. *Id.* Plaintiff then makes a reference to Defendant Dean, and alleges Defendant Dean attempted to recruit him as a snitch. *Id.* However, Plaintiff's claims of "retaliation" for all his disciplinary proceedings, do not follow a logical chronological pattern if based on the alleged attempted recruitment by Defendant Dean. Specifically, the nowhere in any grievance attached by Plaintiff does Plaintiff allege this attempted recruitment. ECF Nos. 3, 4, 10, 11, and 12. Further, Plaintiff fails to allege a timeline for when the attempted recruitment took place, or any reasons why numerous other disciplinary infractions occurred that were unrelated to the single infraction Defendant Dean initiated. ECF Nos. 3–4.

Second, the Court cannot infer from Plaintiff's allegations and attachments to his Complaint that "but for" the alleged retaliatory motive, the "false" disciplinary convictions would not have occurred. Even if Plaintiff could establish that Defendant Dean attempted to recruit him

5

as a snitch prior to the March 2017 disciplinary infraction involving Defendant Dean, Plaintiff's own statements reflect that Plaintiff made a comment in Defendant Dean's presence on the date of the offense which could legitimately result in the finding of guilt for "Threatening an Officer." *See* ECF No. 4, at 22 ("I don't deny saying to myself 'that I'll be done with you,' but did not make it an accusation toward him [Captain Dean]."). Despite Plaintiff's justifications for the statement, such statement could legitimately result in the conviction absent any retaliatory motive by Defendant Dean.

Third, Plaintiff must link the retaliation to his exercise of a specific constitutional right. *Gibbs v. King*, 779 F.2d 1040 (5th Cir. 1986). Plaintiff has not alleged that the retaliation was the result of seeking redress before the courts or complaining to supervisors about subordinates conduct. As such, Plaintiff's claim fails to allege a retaliatory motive for the "false" disciplinary infractions, nor may the facts alleged by Plaintiff allow the Court to "plausibly infer" such motive may have existed. Therefore, his allegation that his disciplinary convictions are the result of retaliation are patently without merit.

Because the disciplinary convictions are not adequately alleged to have resulted from retaliation, Plaintiff's claims are also barred. Plaintiff was convicted of multiple disciplinary infractions. The Supreme Court has held that a § 1983 claim which attacks the constitutionality of a conviction (or imprisonment, as the case may be) does not accrue until that conviction (or sentence) has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477 (1994); *see also Wells v. Bonner*, 45 F.3d 90, 94 (5th Cir. 1995). In *Edwards v. Balisok*, the Supreme Court approved the application of the *Heck* doctrine to the prison disciplinary setting. 520 U.S. 641 (1997). To any

6

extent that Plaintiff is challenging the result of the disciplinary convictions or resultant punishments, and seeking monetary damages, such claims are barred by *Heck* absent Plaintiff properly pleading a claim for retaliation. As Plaintiff's retaliation claims are entirely conclusory, Plaintiff's requests for relief concerning his disciplinary convictions are barred by his findings of guilt in each instance. Therefore, Plaintiff's claims concerning his disciplinary convictions are not cognizable and are dismissed with prejudice.

Plaintiff claims these false disciplinary convictions resulted in improper housing assignments and demotions in his custodial status and line-class. Such claims are not cognizable. "Inmates have no protectable property or liberty interest in custodial classifications." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). In fact, such claims "will never be a ground for a constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Harper*, 174 F.3d at 719 (citing *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998)). When an inmate "relies on a legally nonexistent interest, any alleged due process or other constitutional violation arising from his classification is indisputably meritless." *Harper*, 174 F.3d at 719. Therefore, Plaintiff's claims regarding his "medium security" housing assignment, or his demotion in line class, are frivolous.

### B. Denial of Access-to-the-Courts

Plaintiff also asserts he was denied access to adequate legal supplies to pursue claims with the courts, as a result of ongoing alleged retaliation. Plaintiff sues Defendants NFN Holt and NFN Davis, law library officers, for the denial of adequate legal supplies. An inmate's right of access to court is not absolute. The Supreme Court recently noted some of the limits on the right of access to court:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). Prison officials may place reasonable limits on the right. *See Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989). Restrictions may be imposed for security reasons. *See Procunier v. Martinez*, 416 U.S. 396, 412 (1974), *overruled on other grounds*, *Thornburg v. Abbott*, 490 U.S. 401 (1989). "[I]ndigent inmates must be provided at state expense with paper and pen to draft legal documents ... and with stamps to mail them." *Bounds*, 430 U.S. at 824-25. Prison officials, however, are obligated to provide only reasonable amounts of such supplies. *Id*. at 825. For example, a prisoner does not have a basis for a civil rights lawsuit when he requested 100 sheets of paper a week and received only 75 sheets. *Felix v. Rolan*, 833 F.2d 517, 518 (5th Cir. 1987).

To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendants' actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (internal quotations omitted); *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). He must identify the nonfrivolous, arguable underlying claim. *Id*. There is no constitutional violation when a prisoner has time to submit legal documents in a court despite impediments caused by officials. *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). A civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice. *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991).

Here, Plaintiff asserts that the denial of indigent supplies resulted in the denial of his state habeas 11.07. A review of the Texas Court of Criminal Appeals website reveals the following information about Plaintiff's state court challenges to his conviction:

1. On May 22, 2012, Plaintiff was convicted in Midland County's 441st District Court of the offense of Retaliation and sentenced to 35 years' incarceration. *See State v. Russie,* No. CR39309.

2. Plaintiff filed a direct appeal of his conviction. *See State v. Russie,* No. 11-12-00162-CR.

3. Plaintiff also filed a PDR of the Court of Appeals decision on July 2, 2014. *See State v. Russie,* No. PD-0859-14.

4. On July 15, 2015, Plaintiff filed his first state writ of habeas corpus (11.07 application). *See State v. Russie,* No. WR-83-592-01. The case was denied without written order on the findings and conclusions of the trial court. *Id.*

5. On February 26, 2018, Plaintiff file a second state writ of habeas corpus (11.07 application). *See State v. Russie,* No. WR-83-592-02. The case was denied without written order as successive. *Id.*

Based on these filings, Plaintiff's claim that the denial of access to indigent supplies, that started in 2017 per his claims, affected his 11.07 state writ of habeas corpus are implausible. Plaintiff's first 11.07 application was denied on July 29, 2015. *See State v. Russie*, No. WR-83-592-01. Further, even if the denial or delay of indigent supplies affected the filing of his second state habeas application, that application was not denied based on untimely filing or a lack of response from Plaintiff, but rather was denied solely as a successive writ. *See State v. Russie*, No. WR-83-592-02. As such, Plaintiff has failed to allege harm through the denial or delay of indigent supplies as it relates to his state habeas application.

Further, Plaintiff also alleges the denial of supplies delayed the filing of his present lawsuit. However, Plaintiff was adequately able to litigate the present lawsuit with whatever supplies were provided to him, and the delay in supplies did not result in missed deadlines or issues with the

statute of limitations for filing this lawsuit. No statute of limitations is set forth under § 1983. However, the United States Supreme Court has held that the statute of limitations for a civil rights action is to be determined by reference to the prescriptive period for personal injury actions in the forum state. *Hardin v. Straub*, 490 U.S. 536 (1989); *Owens v. Okure*, 488 U.S. 235 (1989). In Texas, the prescriptive period for such claims is two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2011). The delay alleged by Plaintiff's complaint in receiving adequate legal supplies did not prevent a timely filing of his lawsuit. Thus, Plaintiff failed to demonstrate any prejudice in the delay or denial of indigent supplies, and his claim is dismissed as frivolous.

### C. Improper Denial and Investigation of Grievances

Plaintiff also claims that Defendants failed to adequately investigate his complaints and grievances and failed to protect his constitutional rights. Plaintiff sues Defendant L. Brown, the TDCJ Unit Grievance Supervisor, and Defendant Damon Andrews, Assistant Warden at TDCJ Bill Clements Unit, alleging inadequate investigation and resolution of several grievances Plaintiff filed in response to disciplinary convictions and denial of legal supplies. "[A] prisoner has a liberty interest only in 'freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). A prisoner does not have a constitutionally protected interest in having his complaints and grievances resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Therefore, Plaintiff's claim that the Defendants failed to adequately investigate his grievances fails to allege a violation of a constitutional right and is dismissed with prejudice.

### D. Supervisor Claims

Further, Plaintiff's claims against Defendants Lorie Davis, the Director of TDCJ at the time of the allegations contained in the Complaint, and Kevin Foley, the Senior Warden at the Bill Clements Unit, are based entirely on supervisory liability. Additionally, Plaintiff's claims against Defendant Damon Andrews, beyond his denial of one of Plaintiff's grievances, are also supervisory in nature. In section 1983 suits, liability of government officials for the unconstitutional conduct of their subordinates may not rest solely upon a theory of *respondeat superior* or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing *Robertson v. Sichel*, 127 U.S. 507, 515–16 (1888)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). Thus, supervisory officials are not subject to vicarious liability under section 1983 for the acts or omissions of their subordinates. *See Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Absent direct personal participation in the alleged constitutional violation, a plaintiff must prove that each individual defendant either implemented an unconstitutional policy that directly resulted in injury to the plaintiff or failed to properly train a subordinate employee. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). Thus, Plaintiff's claims against these Defendants should be dismissed with prejudice.

Accordingly, Plaintiff's claims of retaliation through false disciplinary convictions resulting in improper housing assignments, denial of access-to-the-courts and indigent supplies, and inadequate investigation and wrongful denial of grievances are frivolous. Plaintiff's requests for injunctive relief were previously denied. ECF No. 17.

11

CONCLUSION

For the reasons set forth above and pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2) and 42 U.S.C. § 1997e(a), it is ORDERED that the claims contained in the Civil Rights Complaint Plaintiff filed pursuant to 42 U.S.C. § 1983 be DISMISSED with prejudice as frivolous.

**SO ORDERED.**

November 5, 2020.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE